Freeman, J.,
delivered the opinion of the Court.
This action of ejectment was commenced in the Circuit Court of Decatur county in November, 1860. The plaintiff and defendant Bowman both died during the pendency of the suit, and a review has been had in the name of their respective heirs-at-law. Judgment was rendered in favor of the plaintiff, from which an appeal in error was prosecuted to this court.
The tract of land is large, alleged in the pleadings to contain 1020 acres, and being valuable, the case is pressed with much earnestness by counsel on both sides.
*601 The court charged the jury that if they found from the proof that Gainus was in possession of the land conveyed by the grant (that is, his grant) at the time of its issuance, and that he held possession of the land for seven years or more, claiming to the extent of the grant, or all the lands within the limits of the grant, that he so held the peaceable possession of the land for seven years, that although the grant may have been void, or voidable when issued, such possession would give him a good title to the land so held, covered by his grant, except as against infants, etc. lie also charged that the same would be the case if he held by his tenants. To this charge the defendants objected, and then requested the court to charge the jury “that possession of land, so as to produce the bar, must b$ an actual possession of some part of the land in dispute, that cultivation of part of defendant’s claim, not within the • bounds of the disputed part, is not sufficient to authorize the bar of the statutes.” The first part of this request is sufficient to raise the question to be decided.
The principle, stated by his Honor in his charge, is correct as an abstract statement of the law, but the question is, whether taken in connection with the facts in the case, and the request of defendants, counsel, it is the law as applicable to the case in hand. The proof shows that Gainus was living on the West end of the tract at the time his grant issued, in May, 1852, and had either been in possession or had a tenant in possession of that part of the tract, from that -time until 1861, or about that period. It also *602 appears from the testimony, that there had been a division of the tract of land of 1020- acres, as státed by the witness Doherty, in 1850, but which we infer from what we see in this record of the proceedings in a case at Clarksville, in Chancery Court, was not really made until 1851, or it might have been in 1852. Now, after this division was made, there was a deed made by the clerk and master of the Chancery Court at Clarksville, to the half of the land claimed by Gainus in the Clarksville case, in pursuance of a decree of that court ordering a salé of the part allotted to Gainus. Under this sale, as the purchaser at it, the defendant claims title.
The land claimed by defendant is the Eastern part of the land, as marked by this division line. Now, it is clear from the conveyance in the record, and the proof, that independent of the Clarksville record, to the introduction of which there was no objection, the defendants under their conveyances purporting to be in fee simple, only claimed title to the Eastern part of the land, near four hundred acres, and set up no claim whatever to the part occupied by Gainus and his tenants.
The rule of law on this subject, was thus laid down as early as 1809, in the case of Napier v. Simpson, 1 Overt. Tenn. R., Cooper’s Ed., 358-9. “Possession of land, so as to produce a bar, must be an actual possession of some part in dispute. Cultivation of part of the defendant’s claim, not within the bounds of the disputed part, is not sufficient to authorize the bar of the statute.” This case has been fol *603 lowed in numerous cases in our State. See Talbot v. McGavock, 1 Yer., 277; Smith v. McCall, 2 Hum., 165, and Stewart v. Harris, 9 Hum., 715. In this last cause, there bad been a sale of one-half of the original grant, to Stewart. After this, the entire one thousand acres was sold for taxes, and bought by Harris, the defendant, who took a deed for it and took possession under his deed, but the possession so taken was only within the bounds of the Eastern half of the original tract, and did not extend to the Western half, which was. claimed by the plaintiff under his purchase.
The court below, charged almost in the language of the charge now before us. This court reversing that case for this error, say “the Eastern and Western moieties of the original tract of land in question, became from the date of the conveyance to Stewart, separate and distinct tracts, and the actual possession .of the Eastern tract by the defendants, though under a conveyance purporting to include both tracts, gave him no constructive possession of the Western moiety because there cannot be in legal contemplation, a possession, either actual or constructive, of the same identical tract of land, in two adverse claimants, at the same time.” We need not cite further from the opinion. The principle of the case, with the other cases cited, is conclusive of this question, and we therefore hold his honor erred in this portion of his charge to the jury.
A record, or part of a record, was introduced from the Chancery Court at Decaturville, in a suit in *604 which Gainus was complainant, as appeared from a copy of the bill, and defendant, in this case, Bowman was one defendant. This bill was filed for an injunction to stay waste, and claimed distinctly title to land under the claim now set up. The decree of the Chancellor in that case, is in the record, together with the decree of this court, on the appeal taken by Gainus. The Chancellor decreed that Gainus had no title to the land, and dismissed his bill. This decree was affirmed by this court at the April Term, 1860. The Circuit Judge charged the jury that this decree had no conclusive effect on the title of the parties as an adjudication, because the title was not involved in that suit, and the decree of the Chancellor as to title was surplusage, it not being involved in the pleadings, or at issue' between the parties. In this view of the law, his Honor erred.
On sound principles, the complainant would necessarily have to show title in himself of some kind, before he could ask a court to enjoin an other from committing waste on land, as it would be most unreasonable to say, that a party could claim the aid of a court to protect another man’s property in which he had no rights. The authorities abundantly sustain this view. At common law, in an action for waste, the plea of nul waste, the general issue in such cases put the whole declaration in issue, and the plaintiff was compelled to prove his title as laid in his declaration.
Courts of equity, on account of the inadequacy of the remedy at common law, which only gave dam *605 ages for the particular act of waste alleged to have been committed, at an early day took jurisdiction of the question, administering by injunction a much more liberal and efficient remedy. In that court, however, the rule was still maintained that the party must allege distinctly his title in his bill, before he was entitled to ask relief. See Kerr on Injunctions, 207. And on page 237 this author says; “A man who applies for injunction against waste, is required to show a particular title. See also the case Whittelegg v. Whittelegg, Brown’s Ch. R., 57. This being so, his Honor erred on this point also in his instructions to the jury. As to the admissibility - of the record in its complete form, we express no opinion, as the case must be remanded for a new trial, and in the meantime the defendants may be able to supply the lost records, and make it complete by proper proceedings instituted for that purpose.
Let the case be remanded for a new trial.